MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

TAREK HELOU (CABN 218225)
KATHRYN HAUN (DCBN 484131)
Assistant United States Attorney
    450 Golden Gate Ave., Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    E-Mail: Tarek.J.Helou@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> GREGORY WALKER, <br> a/k/a "Fella," <br><br> Defendant. | No. CR 10-0772 SC <br><br> UNITED STATES' SENTENCING MEMORANDUM <br><br> Date: September 16, 2011 <br> Time: 10:00 a.m. |

## I. INTRODUCTION

On June 3, 2010, Defendant Greg Walker committed a very dangerous crime: he fired a gun across a crowded, rush-hour street during a gang shootout. The shooting was recorded by surveillance cameras.

That day, the defendant was walking on Turk Street in San Francisco's Western Addition neighborhood with his brother Julius Hughes, Hughes's girlfriend, and Hughes's young child. Hughes's daughter and girlfriend walked ahead of the defendant and Hughes. A surveillance camera recorded Hughes's daughter and girlfriend as they walked across the entrance to the Laurel Gardens housing complex. As the defendant and Hughes entered the camera's view, they were running past the entrance to Laurel Gardens. The surveillance camera showed a gunman shooting at them from the other side of Turk street. The defendant's brother responded to the shooting by grabbing his daughter and running away. The defendant, by contrast, pulled out a gun and started shooting indiscriminately across Turk Street. The group left the area through a nearby courtyard.

The shooting took place one block from a police station, so officers responded immediately. Although officers did not arrest the defendant because he fled, they found several spent shell casings and a bullet that the defendant had fired into a car. The gun was never recovered. The defendant was a fugitive until September 2010, when he was arrested after he and his girlfriend were shot several times in Oakland in a suspected gang-related shooting. The defendant has recovered, but his girlfriend is paralyzed below the waist.

The Sentencing Guidelines call for a sentence of 87-108 months in custody. The defendant's lack of disregard for life is apparent from his actions. He has not shown any remorse for this crime or for the danger that he created for innocent commuters and pedestrians. He did not have a difficult childhood, and instead of following a law-abiding path pushed by his parents, he joined a gang. In short, there are several aggravating factors that the Court should consider, but no mitigating factors. Therefore, the Court should sentence the defendant to 120 months in custody, above the Guidelines range.

//

## II. BACKGROUND AND RELEVANT FACTS

### A. The Defendant Was Convicted Of Gun Possession Less Than One Month Before He Committed This Crime

The crime in this case occurred on June 3, 2010. Just three weeks earlier, on May 10, 2010, the defendant was convicted of carrying a concealed weapon in San Francisco County Superior Court. (PSR, ¶ 30.) That case arose from a December 18, 2009, incident when the defendant was in a car with his brother, Julius Hughes. (*Id.*) SFPD officers conducted a traffic stop of the car on Market Street in San Francisco and asked the defendant and his brother to get out of the car. (*Id.*) While officers were interviewing the defendant, he ran away from the scene. (*Id.*) One officer chased the defendant and saw the defendant reach into his clothing and throw a gun into the middle of Market Street. (*Id.*) Officers recovered the gun, which was loaded and had been stolen. (*Id.*)

The defendant also has a felony juvenile conviction for assault and battery, which occurred in 2006. (PSR, ¶ 29.) He was also arrested for car theft in 2005 (PSR, ¶ 34) and burglary in 2008 and 2010 (PSR, ¶¶ 35, 36).

### B. The Defendant Is A Gang Member

As the Presentence Report states, the defendant is a member of the "Central Divis Playas," a criminal street gang operating in the Western Addition. (PSR, ¶¶ 5, 50-53.) The defendant has admitted that he is a gang member. (PSR, ¶ 50.) He also has two gang tattoos. (PSR, ¶ 51.) He was shot in September 2010 in a gang-related shooting. (PSR, ¶ 52.)

### C. The Defendant's Background And Childhood Were Not Difficult

The defendant stated that he had no significant traumatic events as a child (PSR, ¶ 40), but his mother stated that he had a difficult time coping with his parents' divorce (*id.*, 46). He had no problems with sexual abuse, domestic violence, or substance abuse. (PSR, ¶ 40.)[1] His

---

[1] The defendant stated, however, that he smoked marijuana and drank alcohol from age 11 until he quit at age 14. (PSR, ¶ 61.) This claim conflicts with his claim during the presentence investigation during his state court conviction that he started using marijuana and alcohol when he was 16 years old. (PSR, ¶ 62.)

parents pushed him to do well and they were good role models to him. (PSR, ¶ 40.) They also kept him away from bad influences and active in sports and school. (PSR, ¶ 46.) The defendant was never left home alone and had good role models in addition to his parents, including his aunts and uncles. (PSR, ¶ 45.)

The defendant dropped out of school, but completed his GED while in custody. (PSR, ¶¶ 66-68, 70.) He has never had a job. (PSR, ¶ 72.)

### III. LEGAL STANDARD AT SENTENCING

#### A. The Court Should Start The Process Of Determining The Appropriate Sentence By Calculating The Guidelines Range

The Court should impose a sentence that reflects the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court must begin the process of determining an appropriate sentence by calculating the correct guidelines range. *Id.* Although the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *United States v. Rita*, 127 S. Ct. 2456, 2464 (2007).

#### B. The Court May Sentence The Defendant Outside The Guidelines Range Based On Sufficiently Compelling Reasons

The guidelines range will be the starting point and initial benchmark for the sentence. *Carty*, 520 F.3d at 991. The Court should keep the guidelines range in mind throughout the process, let the parties argue for a sentence they believe is appropriate, and consider the factors identified in 18 U.S.C. § 3553(a). *Id.* The Court may impose a sentence above or below the guidelines range if the facts of the case support a sentence outside the guidelines range. The Court's justification for deviating from the range should be sufficiently compelling to support the degree of variance in the sentence that it imposes. *Id.*

### IV. THE GUIDELINES RANGE IS 87-108 MONTHS IN CUSTODY

The applicable guideline in this case is U.S.S.G. § 2A2.1(a)(2), which covers attempted murder, not § 2K2.1(a)(4)(A), which covers firearms offenses. (PSR, ¶ 18.) Based on the facts of this case, it is clear that the defendant committed attempted murder. Attempted murder has

1  two elements.  First, the defendant did something that was a substantial step toward killing
2  another person, and second, when the defendant took that substantial step, he intended to kill the
3  other person.  (Ninth Cir. Model Jury Instruction 8.111.)
4      In this case, the defendant fired across Turk Street, satisfying the first element.  He also
5  satisfied the second element when he fired across Turk Street because he intended to kill the
6  other person in the shootout.
7      Applying the guideline for attempted murder, U.S.S.G. § 2A2.1(a)(2), will result in an
8  offense level of 27.  (PSR, ¶¶ 18-27.)  The defendant has five criminal history points, placing
9  him in CHC-III.  (PSR, ¶ 33.)  Therefore, his guidelines range is 87-108 months.

## V.  THE APPROPRIATE SENTENCE IS 120 MONTHS

11     As explained below, several aggravating factors warrant a variance above the applicable
12 guidelines range in this case.  The statutory maximum of 120 months in prison is the appropriate
13 sentence.  That sentence will account for the nature of the offense, the seriousness of the offense,
14 the need to protect society from the defendant, the need to deter the defendant and others, and the
15 lack of mitigating factors in the defendant's favor.

### A.  This Crime Was Incredibly Dangerous

17     This crime was dangerous.  The defendant fired a gun across a crowded, rush-hour street.
18 The sentence should account for the seriousness of the offense under 18 U.S.C. § 3553(a)(1) and
19 the need to reflect the seriousness of the offense under § 3553(a)(2)(A).
20     The defendant's guidelines range applies the cross-reference for attempted murder and
21 therefore already accounts for the fact that he was trying to kill another person.  Still, the
22 defendant was shooting indiscriminately across a street when it was crowded with cars and
23 pedestrians.  This makes his conduct more dangerous than even other shootings and more
24 dangerous than other incidents of attempted murder.  The Court should account for the cavalier
25 method in which the defendant fired a gun across a crowded, rush-hour street.

### B.  The Defendant Is A Danger To The Community

27     Under 18 U.S.C. § 3553(a)(2)(C), the Court should consider the danger that the defendant
28 poses to the community and the need to protect the public from him.

The defendant is dangerous.  In addition to this case, he has one additional gun conviction, for which he was on probation when he committed this crime.  Furthermore, he is only 21 years old.  Although his age might favor lenience, this is his second adult gun conviction in less than two years, and his age indicates that he is young enough that he will be likely to re-offend when he is released from custody.

### C. The Defendant Was Convicted of a Gun Crime Three Weeks Before He Committed This Shooting

Under 18 U.S.C. § 3553(a)(1), the Court should consider the need to deter future criminal conduct.  The Court should seek to deter future criminal conduct by the defendant, and also future criminal conduct by other people.  This concept, general deterrence, is "perhaps paramount among the purposes of punishment . . . ."  *United States v. Barker*, 771 F.2d 1362, 1368 (9th Cir. 1985).  Almost every state and federal court views general deterrence as an important goal of sentencing.  *Id.*  Imposing a sentence that is too short will not deter other people from committing similar crimes.  *United States v. Warr*, 530 F.3d 1152, 1161 (9th Cir. 2008).  Additionally, in this case, the sentence should deter other people from joining and associating with gangs.  *United States v. Hernandez-Villanueva*, 473 F.3d 118, 123 (4th Cir. 2007) (affirming upward variance for multiple reasons including need to deter others from joining and continuing association with gangs).

Just three weeks before the defendant committed the crime in this case, he pleaded guilty to possessing a concealed firearm and received a sentence of three years' probation.  The defendant's first conviction for a gun crime did not deter him from committing additional gun crimes.

Although the defendant's Guidelines range accounts for his being on probation at the time he committed this offense because he received a two-point increase under U.S.S.G. § 4A1.1(d), it does not account for two important facts.  The first important fact is the recency of this crime.  In this case, the defendant was not only on probation, he had been sentenced to probation less than one month before he committed this crime.  The second important fact is the similarity between the crimes.  The crime in this case was obviously more serious because it involved a shooting,

but the offense of conviction was similar to his previous felony. This shows that the defendant was not deterred and immediately went back to committing the same crime that he had just been convicted of.

### D. The Defendant Is A Member Of A Violent Gang, Making His History And Characteristics Aggravating Factors, Not Mitigating Factors

Under 18 U.S.C. § 3553(a)(1), the Court should consider the defendant's history and characteristics when imposing a sentence. In this case, the defendant's gang membership is a strong aggravating factor, and he has few, if any, mitigating factors.

Many defendants have difficult lives, but this defendant appears to have had a normal upbringing. Other than the death of the defendant's grandmother, he had no trauma as a child. He had no problems with sexual abuse, domestic violence, or substance abuse. He also stated that his older family members were not involved in crime, that his parents were good role models, and that they pushed him to do well in life.

During the pretrial investigation, the defendant's father informed U.S. Probation Officer Charles Dickens that the defendant chose his lifestyle and friends on his own. The defendant's father tried to teach the defendant to gravitate toward good people and away from bad people. The defendant's parents raised him well and did their best to keep him out of trouble. The defendant was never left home alone and had good role models in each parent's home (his parents divorced), including aunts and uncles. The defendant's mother told Officer Dickens that her divorce from the defendant's father was hard on the defendant, and that the defendant had trouble coping with it. But she added that the defendant made poor choices in friends and that his parents kept him away from bad influences and active in sports and school. The defendant's girlfriend is not aware of any significant trauma that the defendant faced as a child.

Those factors do not support mitigation for this defendant. Furthermore, his history and characteristics include his gang membership, which supports a higher sentence. *See, e.g., United States v. D.A.L.D.*, 469 F.3d 727, 730 (8th Cir. 2006). The defendant is a member of the gang CDP. During the defendant's jail intake, he admitted to the Alameda County Sheriff's Department that he is a member of a San Francisco gang located on Fell Street. That area is in

his gang's "turf." The defendant has the word "Fella" tattooed on his right forearm and the word "Banga" tattooed on his left forearm. The tattoo "Fella" indicates his "nickname" in the gang. The tattoo "Banga" indicates his membership in CDP. Many CDP members have their nickname tattooed on their right forearm and "Banga" tattooed on their left forearm. The defendant was shot in September 2010 in what the SFPD Gang Task Force believes was a gang-related assault. Finally, the San Francisco County Sheriff's Department and SFPD have identified the defendant as a member of CDP. The defendant's gang membership is an aggravating factor that warrants a higher sentence.

### E. The Defendant Has Not Shown That He Has Any Desire To Rehabilitate Himself

Under 18 U.S.C. § 3553(a)(2)(D), the Court should consider the need for the sentence imposed to rehabilitate the defendant. This defendant has not shown that he has any interest in rehabilitating himself or taking responsibility for his life. His previous sentences have included juvenile hall, juvenile probation, jail, and adult probation. (PSR, ¶¶ 29-30.) Those sentences had no effect on him: he committed this crime while on probation and less than one month after he was convicted of carrying a concealed weapon. He has never had a job and has never been a contributing member of society. Therefore, the need to rehabilitate the defendant does not outweigh the aggravating factors discussed above.

## VI. CONCLUSION

The defendant was raised by a good family with parents who had jobs and taught him the right way to live his life. His family cared for him. Instead of living a law-abiding life, however, he joined a violent street gang. As a member of that gang, he carried a gun on a regular basis, as shown by his previous conviction for carrying a concealed firearm. His gang membership and history with guns culminated in this crime, which showed that he has no regard for others' lives.

//
//
//
//

1  There are no facts in this case that warrant a sentence shorter than 120 months, the statutory
2  maximum.
3
4  DATED: September 6, 2011                    Respectfully submitted,
5                                              MELINDA HAAG
                                               United States Attorney
6
7                                              /S/
                                               _____
8                                              TAREK HELOU
                                               KATHRYN HAUN
9                                              Assistant United States Attorneys