1  Law Offices of
   GEORGE C. BOISSEAU
2  State Bar Number 75872
   740 4th Street
3  Second Floor
   Santa Rosa, California 95404
4  Phone:  (707) 578-5636
   Fax: (707) 578-1141
5  E-Mail: boisseaugc@msn.com

6  Attorney for Defendant
   GREGORY WALKER
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

   UNITED STATES OF AMERICA,            )      CR-10-0772-SC
11                                       )
            Plaintiff,                   )      DEFENDANT'S
12                                       )      SENTENCING MEMORANDUM
   v.                                    )      AND REQUEST FOR
13                                       )      SENTENCING HEARING
   GREGORY WALKER,                       )
14                                       )      Date: November 14, 2011
            Defendant.                   )      Time: 10:00 a.m.
15                                       )

16

17         The defendant, GREGORY WALKER (WALKER), by and through his counsel of

18  record, George C. Boisseau, hereby submits his Sentencing Memorandum and hereby requests

19  a sentencing hearing.

20                              INTRODUCTION

21         WALKER was convicted of unlawfully possessing ammunition in violation of 18

22  U.S.C. §922(g)(1).[1]  He knowingly possessed five rounds of Sellier & Bellot  .40 S&W caliber

23  ammunition on June 3, 2010.

24

25

26  _____

27  [1]
           Title 18, United States Code §922(g)(1) carries a maximum sentence of 10-years in
28  custody and a fine of $250,000.

                                      1

   DEFENDANT'S SENTENCING MEMORANDUM

1    On June 3, 2010, at approximately 1722 hours, San Francisco Police Officers

2    responded to a call of a shooting in the area of Turk and Steiner Streets in San Francisco.

3    Officers canvassed the area for potential witnesses and recovered shell casings and several

4    bullet fragments, 10 on the north side of Turk Street and 5 on the south side.  Three Sellier &

5    Bellot .40 caliber S&W ammunition shell casings were recovered on the Turk Street sidewalk

6    in front of the Laurel Gardens Apartment complex about 25-30 feet outside and east of the gate

7    to the apartment complex.  Two other Sellier & Bellot .40 caliber S&W ammunition shell

8    casings were found on the sidewalk within the Laurel Garden Apartment complex.[2]  These

9    shell casings were found about 30 feet inside the gate.  At least one of the vehicles parked in

10   the lot, a blue Ford Focus, sustained bullet holes in its rear door and windshield.   A slug from

11   one of the .40 caliber shell casings was found in the vehicle.

12       Officers of San Francisco Police Department's Gang Task Force took over the

13   investigation and accessed the surveillance camera in the Laurel Gardens housing project

14   office.   Members of the unit, including Officer Sean Griffin (Griffin), viewed the apartment

15   complex surveillance videos.  Some of the cameras captured the shooting and the subjects

16   involved.[3]  Griffin identified WALKER and a Julius Hughes from one of the scenes capturing a

17   subject returning gunfire and escaping into the complex from the gunfire originating across the

18   street.  WALKER was identified as the person in a black sweatshirt who fired a handgun after

19   entering the complex by a gate and running through the complex.  His half-brother, Julius

20   Hughes, was identified as the person in a white and blue checkered shirt who was running with

21   him carrying a child to safety.[4]

22       Griffin, a police officer for 11 years and who has investigated thousands of cases,

23   knows both subjects from previous investigations and dozens of contacts with WALKER.   The

24   _____

25   [2]   Sellier and Bellot .40 caliber ammunition is manufactured in the Czech Republic.
     [3]   No evidence was introduced that San Francisco Police Officers Griffin or Do worked in
26   the gang unit or that anyone involved, including WALKER, was a gang member.
     [4]   The surveillance videos were introduced into evidence as Government Exhibits Nos. 2
27   and 3.  Still images from Government Exhibit No. 3 were introduced as Government Exhibit
     Nos. 4, 5 and 6.
28

2

DEFENDANT'S SENTENCING MEMORANDUM

1   surveillance video was programmed to record on motion and it took Griffin a second to identify

2   WALKER from the two-second video clip.   He also saw facial hair on WALKER.

3          According to Griffin, WALKER has a distinctive face and a receding hairline which

4   he could see from the video.[5]  After identifying WALKER and his half-brother Hughes, Griffin

5   called in to dispatch that WALKER was one of the suspects involved in the shooting.[6]

6   In the days after the incident, Griffin and his unit executed several search warrants for

7   evidence relating to the June 3rd shooting.  Neither WALKER nor evidence linking WALKER

8   to the shooting were recovered from the searched apartments.

9          San Francisco Police Officer David Do, 13 years on the force and having been

10  involved in hundreds of cases, also knew WALKER from previous contacts and identified him

11  from one of the surveillance video clips.  Just prior to trial he had been contacted by the United

12  States Attorney's Office and asked whether he knew WALKER.  On his own he reviewed

13  some photographs of WALKER.  At the United States Attorney's Office he was asked whether

14  he could identify WALKER from a surveillance video clip.  At trial he identified WALKER as

15  the person in a black sweatshirt.  He testified that he recognized WALKER  from his facial

16  features and distinctive receding hairline.

17         After an indictment was returned. WALKER was arrested on November 22, 2010 by

18  Special Agents of the Federal Bureau of Investigation.  Booking photographs of WALKER

19  were taken at that time and were shown to Do and Griffin (and the jury) during trial.

20

21

22

23

[5]   Griffin was also aware that Hughes' mother-in-law lived at the Laurel Gardens complex.
24  He searched the apartment but did not find WALKER or Hughes.

[6]   In the surveillance video, a suspect on the north side of Turk Street can be seen shooting
25  at a group of people who were walking eastbound on Turk Street towards Steiner Street.  A
26  black male in the group being fired upon, later determined to be WALKER, pulled out a firearm
    and began shooting back.  After firing several shots, WALKER ran into the court yard of 1555
27  Turk Street and is later seen running away alone. No one was injured in the shootout.

28

3

DEFENDANT'S SENTENCING MEMORANDUM

I.

OBJECTIONS TO PRE-SENTENCE REPORT

1. Offense Conduct (¶ 5):

The defense objects to the conclusion that WALKER is a member of the "Central Divis Playas" gang set out in paragraph 5 of the PSR.  No gang evidence was introduced at trial and no discovery was provided to the defense regarding such allegations.  In fact, the government specifically objected to any such production and/or disclosure.[7]

The information from Gang Task Force detectives is unreliable hearsay which should not be included in the pre-sentence report.    It is unduly prejudicial and inflammatory.

Also, WALKER objects to the characterization of the incident as a "shoot-out" and that WALKER fired upon an unknown person from a position of "safety" and after the unknown individuals stopped firing at him, his brother and his brother's young daughter.  WALKER was not behind a concrete wall when he fired.  He was in an open area of the parking lot and the surveillance video shows dirt being kicked up by a bullet being fired at WALKER the same time he is firing his own weapon.    Moreover, there is an iron gate in front of WALKER, giving the unknown assailants a clear view of him in the parking area of the apartment complex.

WALKER fired in self-defense.  He is clearly shown to be fleeing the unknown assailants who are firing upon WALKER and his family.  The surveillance video shows that WALKER fired his gun only after being shot at by multiple assailants.    Use of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force as long as the force used is no more force than

---

[7]    WALKER did not register as a member of the "Central Divis Playas" gang because of the state firearms conviction and the defense has not been provided any information supporting such an allegation.   There is thus no factual support for this allegation contained in Paragraph 30 of the PSR.  WALKER was convicted in state court of unlawfully possessing a firearm.  While gang terms were imposed as a condition of probation, no findings were made that WALKER was a member of any gang or that his possession of a firearm on that occasion was for the benefit of, or done in association with any criminal street gang or gang member.

4

DEFENDANT'S SENTENCING MEMORANDUM

1  appears reasonably necessary under the circumstances.  Manual of Model Criminal Jury

2  Instructions of the Ninth Circuit, 6.7.  Further, force likely to cause death or great bodily harm

3  is justified in self-defense if a person reasonably believes that such force is necessary to prevent

4  death or great bodily harm.

5       In this case, WALKER acted in defense of himself and others.  He was being fired

6  upon by multiple assailants and was not in a position of safety when he fired back in self-

7  defense.

8       2.       Other Arrests (¶'s 34-36) :

9       WALKER objects to all the allegations contained in paragraphs 34, 35, and 36 of the

10  PSR.  None of this conduct resulted in a conviction and its inclusion in the pre-sentence report

11  is highly prejudicial and inflammatory.  Moreover, it may unfairly be used by the Bureau of

12  Prisons to determine the appropriate housing.

13       3.       Offense Level Computation (¶'s 18-27):

14       The defense objects to the base offense level calculation, cross-referenced pursuant to

15  U.S.S.G. §§2K2.1(c) and 2X1.1, for assault with intent to commit murder (attempted murder).

16  See U.S.S.G. §2A2.1(a)(2).  The PSR calculates the base offense level and the adjusted offense

17  level at 27.  The defense requests that the base offense level be calculated at 14 pursuant to

18  U.S.S.G. 2K2.1(a)(6).

19       In this case, WALKER fired his weapon in defense of himself, his brother and his

20  brother's young daughter.   There is no evidence that WALKER committed the offense of

21  attempted murder.  There was no evidence presented at trial that WALKER intended

22  unlawfully to kill anyone.  WALKER was being shot at by others and only shot his firearm as

23  he was fleeing with his brother and his brother's daughter from the gunfire directed at him and

24  his family.

25       WALKER never reached a position of safety.  At one point he was behind a SUV

26  automobile  parked on Turk Avenue which was hit by gunfire.  When he fired upon the

27  unknown assailants, he was in the open.  As can be seen by the video surveillance, bullets fired

28  at WALKER kicked up dirt directly in front of him.  WALKER fired twice into the unoccupied

5

DEFENDANT'S SENTENCING MEMORANDUM

1  blue Ford Focus  in front of him, hitting the vehicle once in the windshield and once into the

2  rear passenger door.

3          4.          Personal and Family Data (¶'s 50-53):

4          WALKER objects to the PSR's recitation that he is a gang member contained in

5  Paragraphs 50-53 of the PSR.   WALKER is not a "registered" gang member of "Central Divis

6  Playas" or any other criminal street gang.  Moreover, none of this purported information has

7  been disclosed to the defense.  WALKER has not been convicted of any qualifying offense

8  under state law that would require registration as a "gang" member.  He was not convicted a

9  violation of Penal Code §186.22(a) (active participant in a criminal street gang) or been found

10  responsible for any sentencing enhancement under Penal Code §186.22(b) (committing an

11  offense at the direction of, for the benefit for, or in association with a criminal street gang

12  member).

13          The information from Gang Task Force detectives is unreliable hearsay which should

14  not be included in the pre-sentence report.   It is unduly prejudicial and inflammatory.

15          5.          Additional Factors to be Considered in Imposing Sentence (¶ 95):

16          The defense objects to the description of the incident as a "gun-fight" and the claim by

17  the probation department that he has no remorse for his crime which is set out in paragraph 95

18  of the PSR.  WALKER has not attempted to justify his possession of ammunition.  It is the

19  characterization of this offense as attempted murder, something he was neither charged with,

20  nor convicted of, which brings self-defense into play.  He has not continued to claim his

21  innocence to the charged offense.  Rather, under advice of counsel, he has made no statements

22  regarding the offense for which he was convicted.

23                                                        II.

24      THERE IS NO EVIDENCE TO SUPPORT A FINDING THAT WALKER
        COMMITTED THE CRIME OF ATTEMPTED MURDER EITHER
25      UNDER FEDERAL OR STATE LAW.

26          One provision of Section 2K2.1 of the sentencing guidelines requires adjustment of a

27  defendant's offense level if a firearm is used or possessed "in connection with another felony

28  offense."  U.S.S.G. §2K2.1(b)(6).  Another part of this section requires application of other

DEFENDANT'S SENTENCING MEMORANDUM

1  guidelines' provisions if the firearm is used or possessed "in connection with the commission

2  or attempted commission of another offense."U.S.S.G. 2K2.1(c); see United States v. Myers,

3  112 F.3d 406, 407 (9th Cir.1997).  In this case, for the cross-reference to the attempted murder

4  guidelines section to apply, the offending conduct must have satisfied all the elements for

5  attempted murder either under federal or state law.  See United States v. Milton, 27 F.3d 203,

6  206 (6th Cir.1994); Application Note 14, U.S.S.G. §2K2.1 (stating that the cross-reference may

7  be a federal, state or local offense).  Under both federal and state law, a specific intent to kill is

8  a required element of attempted murder.  See e.g., United States v. Matthews, 36 F.3d 821,

9  823-24 (9th Cir.1994); People v. Visciotti, 2 Cal.4th 1, 58-59 (1992); People v. Lee, 43 Cal.3d

10  666, 670 (1987).

11       Under federal law, a defendant cannot be guilty of an attempted murder without a

12  specific intent to kill.  Braxton v. United States, 500 U.S. 344, 351 (1991); United States v.

13  Mun, 41 F.3d 409, 411 (9th Cir.1994) (court upheld the application of the attempted murder

14  guidelines section in setting the base offense level in a case in which the defendant fired three

15  shots inside the bar where the victim was located); Manual of Model Criminal Jury Instructions

16  for the Ninth Circuit, §8.93.

17       Similarly, under state law, attempted murder requires the specific intent to kill and the

18  commission of a direct but ineffectual act toward accomplishing the intended killing.  See

19  People v. Swain,12 Cal.4th 593, 604-605 (1996); People v. Mayfield, 14 Cal.4th 668, 769

20  (1997) ; People v. Lee, supra,  43 Cal.3d at 679.  A defendant whose acts are consistent with

21  felony-murder or murder with implied malice (had the attempt been successful) cannot be

22  guilty of attempted murder in the absence of the specific intent to kill.  See People v. Guerra,

23  40 Cal.3d 377, 386 (1985); CALCRIM 600.  This is because mental state required for

24  attempted murder has long differed from that required for murder itself.   Murder does not

25  require the intent to kill.  Implied malice—a conscious disregard for life—suffices.  People v.

26  Lasko, 23 Cal.4th 101, 107 (2000); People v. Bland, 28 Cal.4th 313, 327 (2002).  In contrast,

27  "[a]ttempted murder requires the specific intent to kill and the commission of a direct but

28  ineffectual act toward accomplishing the intended killing." People v. Swain, 12 Cal.4th 593,

7

DEFENDANT'S SENTENCING MEMORANDUM

1  604–605 (1996).  Hence, in order for a defendant to be convicted of the attempted murder of

2  another, the prosecution has to prove he acted with specific intent to kill that person.  <u>Bland</u>,

3  <u>supra</u>, 28 Cal.4th at p. 331.[8]

4        Further complicating the matter in this case is the fact that under state law the doctrine

5  of transferred intent does not apply to attempted murder.  See <u>People v. Bland</u> (2002) 28

6  Cal.4th 313, 327.

7        In its classic form, the doctrine of transferred intent applies when the
       defendant intends to kill one person but mistakenly kill another.  The intent
8       to kill the intended target is deemed to transfer to the unintended victim so
       that the defendant is guilty of murder.  In contrast, the doctrine of transferred
9       intent does not apply to attempted murder: to be guilty of attempted murder,
       the defendant must intend to kill the alleged victim, not someone else.
10      Whether the defendant acted with specific intent to kill must be judged
       separately as to each alleged victim.

11

12  <u>People v. Bland</u>, <u>supra</u>, 28 Cal.4th at 331.  In this case, there is no evidence that WALKER

13  intended to kill anyone--people he evidently did not know.[9]

14

15

16  ─────────────────────────

17  [8]    Where a homicide results from the use of deadly weapon, malice may be implied from
assault in the absence of justifying or mitigating circumstances.  <u>Jackson v. Superior Court,</u> 62
18  Cal.2d 521, 525-526 (1965).  However, for attempted murder the specific intent to kill may not
19  be inferred merely from the use of a deadly weapon.  See <u>People v. Belton</u>,105 Cal.App.3d 376,
381 (1980) (intent to murder cannot be inferred from commission of the crime of assault with a
20  deadly weapon, and a charge of assault-with-a-deadly-weapon-to-murder requires proof of a
specific intent to murder above and beyond proof of the assault with a deadly weapon).
21  [9]    In order to sustain a charge of attempted murder, there must be sufficient proof of an
22  express intent to kill above and beyond proof of the assault with a deadly weapon.  Even the
shooting of a gun at close range may not be sufficient to establish express malice as the intent
23  may only be to disable.  See e.g., <u>People v. Ratliff</u>, 41 Cal.3d 675, 695 (1986); <u>People v. Johnson</u>
24  30 Cal.3d 444, 447-449 (1981) (defendant's act of shooting his victim at close range did not so
conclusively demonstrate an intent to kill as to render harmless the error in instructing on implied
25  malice).  Thus, there is no inference of express malice from the use of a weapon.  To be guilty of
26  attempted murder the defendant has to harbor express malice toward that victim, that he either
desire[s] the result [i.e., death] or know[s], to a substantial certainty, that the result will occur.
27  See <u>People v. Davenport</u>, 41 Cal.3d 247, 262 (1985); <u>People v. Velasquez</u>, 26 Cal.3d 425, 434
28  (1980).  To hold otherwise would make every assault with a firearm or other deadly weapon an
attempted murder.

8

DEFENDANT'S SENTENCING MEMORANDUM

1    First, WALKER fired his weapon in defense of himself and others.  As such, he has a

2  complete defense to attempted murder.[10]

3    Even if self-defense were not available, there is no evidence that WALKER intended

4  to kill anyone.  There is no evidence that WALKER even fired his weapon at the unknown

5  individuals who were firing at him, his brother and his brother's young daughter.  There was

6  absolutely no evidence that anyone was in the blue compact when shots were fired into its

7  windshield and rear passenger door.

8    In this case, there is insufficient evidence to sustain a charge of attempted murder for

9  WALKER as there is no evidence supporting an intent to kill.  At worst, the evidence may

10  support that WALKER committed an assault with a firearm.  Using the cross-reference to

11  "aggravated assault" contained in U.S.S.G. 2A2.2, the base offense level for such an assault

12  would be 14 and there would be a corresponding 5 level upward adjustment for discharging a

13  firearm in connection with the assault.  U.S.S.G. §§2A2.2(a), (b)(2).  Therefore, under Section

14  §2K2.1(c), WALKER's adjusted offense level would be 19, not 27.

15                                    III.

16  <u>EVEN ASSUMING THE FIREARM WAS USED OR POSSESSED "IN
    CONNECTION WITH ANOTHER FELONY OFFENSE",WALKER</u>
17  <u>SHOULD ONLY RECEIVE A 4-LEVEL UPWARD ADJUSTMENT
    PURSUANT TO U.S.S.G. §2K2.1.</u>

18

19    According to Section 2K2.1(b)(6),

20    If the defendant used or possessed any firearm or ammunition in connection
      wit another felony offense; or possessed or transferred any firearm or
21    ammunition with knowledge, intent, or reason to believe that it would be
      used or possessed in connection with another felony offense, increase by 4
22    levels.  If the resulting offense level is less than level 18, increase to level 18.

23

24

25

26

      [10]    Had the government charged WALKER with attempted murder, it would have had to
27  prove beyond a reasonable doubt that he did not act in self-defense or defense of others.  Manual
    of Model Criminal Jury Instructions for the Ninth Circuit, §6.7.  State law places the same
28  burden on the prosecution.  CALCRIM 600.

                                    9

    DEFENDANT'S SENTENCING MEMORANDUM

1   U.S.S.G. §2K2.1(b)(6). With an adjusted offense level of 18, WALKER's guideline range

2   would be 33-41-months. An adjusted offense level of 19 would result in a guideline range of

3   37-46 months.

4           In this case, even assuming WALKER's discharge of the firearm was not justified by

5   self-defense, he should only receive the 4-level upward adjustment for using or possessing the

6   firearm "in conjunction with another felony offense." An assault with a firearm, for example,

7   would be a felony under state law and could serve as a basis for an adjustment pursuant to

8   Section 2K2.1(b)(6).

9                                          IV.

10  <u>THIS COURT SHOULD IMPOSE A SENTENCE OF TWENTY-ONE
    MONTHS, THE LOW-END OF AN ADJUSTED OFFENSE LEVEL OF 14,</u>

11  <u>BECAUSE IT IS  A REASONABLE SENTENCE CONSIDERING THE
    FACTORS SET OUT IN 18 U.S.C. §3553(A)</u>.

12

13          Sentencing courts must give "meaningful consideration" to all of the statutory factors

14  in 18 U.S.C. §3553(a). The factors set forth in 18 U.S.C. §3553(a) are:

15
           (1) the nature and circumstances of the offense and the history and
16         characteristics of the defendant;
           (2) the need for the sentence imposed–(A) to reflect the seriousness of the
17         offense, to promote respect for the law, and to provide just punishment for
           the offense; (B) to afford adequate deterrence to criminal conduct; © to
18         protect the public from further crimes of the defendant; and (D) to provide
           the defendant with needed educational or vocational training, medical care,
19         or other correctional treatment in the most effective manner;
           (3) the kinds of sentences available;
20         (4) the kinds of sentence and the sentencing range established for–(A) the
           applicable category of offense committed by the applicable category of the
21         defendant as set forth in the guidelines...;
           (5) any pertinent policy statement...issued by the Sentencing
22         Commission...that is in effect on the date the defendant is sentenced.
           (6) the need to avoid unwarranted sentence disparities among defendants
23         with similar records who have been found guilty of similar conduct; and
           (7) the need to provide restitution to any victims of the offense.
24

25  Section 3553(a) clearly states that a court must impose a sentence that is "sufficient but not

26  greater than necessary to comply with the purposes of sentencing. This requirement is often

27  referred to as 'the parsimony provision," and the Supreme Court has referred to it as the

28  "overarching instruction" of 18 U.S.C. §3553(a). See <u>Kimbrough v. United States</u>, 552 U.S. 85

DEFENDANT'S SENTENCING MEMORANDUM

1   (2007). Although the offender's conduct is part of the sentencing equation, it is not the totality

2   of it, and the sentencing court must not focus on the offense at the expense of the individual

3   offender. United States v. Booker, 543 U.S. 220 (2005) and United States v. Ameline, 409

4   F.3d 1073 (9th Cir.2005)(en banc). The sentence must be long enough to reflect the

5   seriousness of the offense, provide for just punishment and promote respect for the law.

6   Further, it should afford adequate deterrence to criminal conduct in general and protect the

7   public. It must be "sufficient but not greater than necessary" to reflect societal concerns and

8   individual considerations.

9       The defense is requesting the low-end of a guideline sentence based upon an adjusted

10  offense level of 14 and a criminal history of III. WALKER will be twenty-years old at time of

11  sentencing. Any time imposed in this case will be significantly more time than he has ever

12  served before.[11] He now has a family to support and he must turn his life around to serve as a

13  positive role model for his young daughter.

14      WALKER's family is supportive of him and will provide him a place to live and

15  financial help upon his release from custody. A sentence of 21-months will afford adequate

16  deterrence to criminal conduct. It will protect the public and will allow WALKER to receive

17  vocational training to aid in his rehabilitation. He will be supervised by the probation

18  department upon his release and such supervision will ensure an orderly and disciplined

19  transition to the community.

20                          CONCLUSION

21      For the foregoing reasons, WALKER respectfully requests that this Court impose a

22  sentence of 21-months, the low-end of an adjusted offense level of 14 with a criminal history of

23

24  _____

25  [11]    The government notes in its sentencing memorandum that WALKER was arrested for car
    theft and burglary but fails to mention that he was never prosecuted for those offenses. It claims
26  that WALKER was shot in a gang-related assault in September, 2010, without any proof that it
    was indeed gang-related and without any evidence that WALKER somehow provoked the
27  shooting or was anything other than a victim in the shooting. The government has never
28  produced any evidence supporting its claim that WALKER is a gang member despite specific
    requests by the defense for such evidence.

                                    11

    DEFENDANT'S SENTENCING MEMORANDUM

1    III.  This sentence is reasonable within the meaning of <u>Gall v. United States</u>, 552 U.S. 38

2    (2007) and consistent with the factors set out in 18 U.S.C. §3553(a).  It is further respectfully

3    requested that this Court recommend that WALKER be designated to the Federal Correctional

4    Institute (FCI) or Prison Camp (low security facility) at Lompoc, California so that he can be

5    relatively close to his family.

6         Dated: November 7, 2011

                                              Respectfully submitted,
7

                                              _____/s/_____
8                                             GEORGE C. BOISSEAU

9                                             Attorney for Defendant
                                              GREGORY WALKER

12

DEFENDANT'S SENTENCING MEMORANDUM

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing <u>SENTENCING</u>

<u>MEMORANDUM</u> was served this date to the following parties and attorneys for parties by e-

filing and mailing a copy to:

  Tarek Helou
  Assistant U.S. Attorney
  United States Attorney's Office
  Northern District of California
  11th Floor Federal Building
  450 Golden Gate Avenue
  San Francisco, California 94102
  Fax: (415) 436-7234

I caused the following additional parties to be personally served by mailing a  copy to:

  Charles Dickens
  United States Probation Officer
  United States Probation Department
  17th Floor Federal Building
  450 Golden Gate Avenue
  San Francisco, California 94102
  Fax: (415) 436-7572

  I certify under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of November, 2011, in Santa Rosa, California.


          /s/
        GEORGE C. BOISSEAU

13

DEFENDANT'S SENTENCING MEMORANDUM