MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

TAREK HELOU (CABN 218225)
KATHRYN HAUN (DCBN 484131)
Assistant United States Attorney
    450 Golden Gate Ave., Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7200
    Fax: (415) 436-7234
    E-Mail: Tarek.J.Helou@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 10-0772 SC |
| Plaintiff, | UNITED STATES' REPLY SENTENCING MEMORANDUM |
| v. | Date: November 14, 2011 |
| GREGORY WALKER, a/k/a "Fella," | Time: 10:00 a.m. |
| Defendant. | |

## I. INTRODUCTION

The defendant, in his sentencing memorandum, alleges that the attempted murder guideline does not apply in this case and that the Government has not proven that he is a gang member. The defendant is incorrect. The attempted murder guideline applies because he was not acting in self-defense when he fired his gun across a crowded street. Additionally, as the defendant has admitted in the past, he is a gang member.

Noticeably absent from the defendant's sentencing memorandum is any acknowledgment of the danger that he created by firing a gun across a crowded street during rush hour. Not once does he explain why a sentence shorter than ten years would be sufficient even if the attempted murder guideline were not applicable in this case. He also ignores that he has no respect for the law, as evidenced by his conviction for illegally possessing a gun just three weeks before the shootout in this case.

Simply put, the defendant has not explained how any sentence shorter than ten years can protect the public from him, deter him from committing more gun crimes, and deter other people – especially his gang affiliates – from committing more gun crimes. This is not a mine-run 922(g) case; the defendant's crime was much more dangerous. He committed a serious crime and the Court's sentence must be equally serious.

## II. THE CORRECT GUIDELINES RANGE IS 87-108 MONTHS

### A. The Probation Office Correctly Applied The Attempted Murder Guideline

In most cases, U.S.S.G. § 2K2.1 should be used when the defendant is convicted of violating 18 U.S.C. § 922(g). But here, because the defendant used the firearm and ammunition in connection with the commission of another offense, the court should apply the offense level for the other offense because it is greater than the firearm offense's base offense level. U.S.S.G. §§ 2K2.1(c)(1)(A); 2X1.1. In this case, the defendant used the firearm and ammunition to commit the crime of attempted murder, so the Court should apply U.S.S.G. § 2A2.1(a)(2), the guideline for attempted murder, instead of § 2K2.1, the guideline for being a felon in possession of a firearm. *See, e.g., United States v. Canady*, 578 F.3d 665, 673 (7th Cir. 2009).

Based on the facts of this case, it is clear that the defendant committed attempted murder.

Attempted murder has two elements. First, the defendant did something that was a substantial step toward killing another person, and second, when the defendant took that substantial step, he intended to kill the other person. (Ninth Cir. Model Jury Instruction 8.111.) In this case, the defendant fired across Turk Street, satisfying the first element. He also satisfied the second element because when he fired across Turk Street, he intended to kill the other person in the shootout.[1]

Therefore, in this case, the defendant's use of the firearm constituted attempted murder. Applying the guideline for attempted murder, U.S.S.G. § 2A2.1(a)(2), will result in an offense level of 27. Because he is in CHC-III, his guidelines range is 87-108 months in custody.

B. **The Defendant Did Not Act In Self-Defense**

The defendant has not put forth any facts showing that he acted in self-defense. His claim that he acted in self defense is based solely on his self-serving assertion that the video that captured the incident shows that he was shot at before he fired his gun.

At sentencing, the Government bears the initial burden of production and ultimate burden of persuasion. *United States v. Guzman-Mata*, 579 F.3d 1065, 1073 (9th Cir. 2009). But once the Government makes a prima facie case, as it has done here, the burden of production shifts to the defendant for any adjustment he is seeking. *Id.* To satisfy that burden, the defendant must come forward with enough evidence to permit a fact-finder to decide the issue in his favor. *Id.* at

---

[1] Although recklessness cannot support a conviction for attempted murder, the defendant's actions were more than reckless. A defendant is reckless when he acts in a manner grossly deviating from a reasonable standard of care so that he is aware that his conduct caused a serious risk of death. (Ninth Cir. Model Jury Instruction 8.111 (citing *United States v. Kwong*, 14 F.3d 189, 194-95 (2d Cir. 1994)); *see also* U.S.S.G. § 2A1.4, comment. n.1.) By contrast, in this case, when the defendant fired across Turk Street, he intended to kill the other person in the shootout (that person is visible but not identifiable in the video of the shooting). Although the defendant's behavior might have been reckless toward the commuters driving down Turk Street and other people walking down the street, it was intentional with respect to the other person in the shootout, at whom the defendant aimed. This also is not a case of aggravated assault, which would be where a defendant used a weapon during an assault, but not with the intent to kill someone. Examples of aggravated assault would be a defendant attacking someone with a baseball bat, attacking someone without a weapon but still causing serious bodily injury, or attacking someone without a weapon while committing a burglary.

1073-74.  The defendant has not done so here for two reasons.

First, the video does not show that the defendant was shot at before he fired his gun.  The video shows the defendant running from behind a building, another man shooting at the defendant, and the defendant shooting back after he had run into the parking lot of the Laurel Gardens housing development and the other man had run away.  The video does not show what happened before the defendant is visible from behind the wall.  The defendant has not stated that before he was visible on the video, he did not fire at the other man.

Second, the defendant had reached a position of safety before he fired his shots.  As the video shows, the defendant fired several shots after he was in the courtyard at Laurel Gardens and the other shooter had left the area.  Furthermore, the defendant was behind a massive brick wall, which shielded him from any fire that could have been directed at him.  At that point, the defendant was in a position of safety.  Therefore, he cannot rely on self-defense.  *See United States v. Wagner*, 834 F.2d 1474, 1486 (9th Cir. 1987) (defendant cannot rely on self-defense when victim was unarmed and in retreat).

### C. Even If The Court Does Not Apply The Attempted Murder Guideline, 120 Months Is The Appropriate Sentence

Even if the Court determines that it should apply the guideline for aggravated assault instead of attempted murder, which would result in level 19 and a range of 37-46 months in custody, the Court should still sentence the defendant to 120 months in custody.  As the Government argued in its Sentencing Memorandum, the defendant committed a very dangerous crime, has shown no remorse, and was convicted of another gun crime three weeks before committing this crime.  Additionally, even though the defendant was convicted at trial, there is no dispute that he committed the charged offense.  (Def. Sent. Mem, Doc. # 79 at 6:20-21 (defendant "has not continued to claim his innocence to the charged offense.").)

### III. THE DEFENDANT IS A GANG MEMBER

The defendant is a member of the "Central Divis Playas," also known as "CDP," a criminal street gang in San Francisco's Western Addition neighborhood.  The defendant claims

//

that the Government has not proven that he is a gang member.[2] The defendant is incorrect.[3]

The defendant admitted that he is a gang member during his intake at Alameda County Jail when he was detained in this case. (PSR, ¶ 50.) Additionally, the defendant has "Fella" tattooed on his right forearm and "Banga" tattooed on his left forearm. (PSR ¶ 51; Declaration of Jake Millspaugh in Support of the United States' Reply Sentencing Memorandum, ¶ 5.) His nickname is "Fella," and "Banga" stands for "gang banger." (Millspaugh Decl., ¶ 5.) When the defendant raises his arms, his tattoos read "Fella Banga." (Ex. F; Millspaugh Decl., ¶ 5.) His tattoos indicate that he is in CDP. (Millspaugh Decl., ¶ 6.) Other CDP members have similar tattoos. (*Id.*) For example, CDP member Charles Heard, whose nickname is "Cheese," has "Cheese Banga" tattooed on his forearms. (*Id.*, ¶ 6(a).) The defendant's late brother, Julius Hughes, also a CDP member, had "Banga" tattooed on his forearm. (*Id.*, ¶ 6(b).) Skyler Stewart, another deceased CDP member, was nicknamed "Sky" and had "Sky Banga" tattooed on his forearms. (*Id.*, ¶ 6(c).) Reginald Elmore, who is also a CDP member and whose nickname is "Beef," has "Beef Banga" tattooed on his forearms. (*Id.*, ¶ 6(d).)

Other evidence also shows that the defendant is in CDP.[4] For example, when the

---

[2] The defendant, however, does not claim that he is not a gang member. Making such a claim, which is false, would result in a two-level increase in his offense level under U.S.S.G. § 3C1.1 for obstructing justice. *See United States v. Owolabi*, 69 F.3d 156 (7th Cir. 1995) (applying § 3C1.1 to statements made by defendant's attorneys when defendant knows they are false).

[3] The defendant also claims that the Government has not provided him with any discovery during this case stating that he is in CDP. That is incorrect. The Government produced several documents stating that defendant is in CDP. (*See* Ex. A at GW-205; Ex. B at GW-34, GW-37; Ex. C at GW-42; Ex. D at GW-449, GW-455.) Additionally, during a pretrial evidentiary hearing in this case, SFPD Officer Sean Griffin and Sergeant David Do both stated that they believed he was in a gang. The defendant did not question those statements. (*See* Ex. E at 85:2-4; 90:11; 107:8-11; 110:22-111:3; 115:16-21; 117:23-118:1.)

[4] Additionally, in a jail call, the defendant's father asked if the defendant expected to have problems with anyone in the jail. The defendant responded that he did not believe he would. Although this, in itself, is not evidence of gang membership, it does indicate that the defendant had specific concerns about other people who might be housed in his facility. That is consistent with concerns that a gang member would have while incarcerated. (Millspaugh Decl., ¶ 7.)

defendant told the Alameda County Sheriff's Office that he was in a gang, he specifically stated that it was a gang near Fell Street. (PSR, ¶ 50.) Fell Street is in CDP's gang turf. (Millspaugh Decl., ¶ 4.)

Several other recent, gun-related incidents show the defendant's connection to CDP:

- November 25, 2008: CDP member Charles Heard shot and killed a man during a robbery. (Millspaugh Decl., ¶ 8(a).) A surveillance video showed that Walker was nearby around the time of the shooting.[5] (*Id.*)

- January 8, 2009: CDP member Reginald Elmore fired a gun into a crowd of people who gathered for the funeral of a member of the "Eddy Rock" gang, another Western Addition gang with which CDP has been feuding for several years.[6] (Millspaugh Decl., ¶ 8(b).) Based on surveillance videos and phone toll records, agents believe that the defendant called Elmore to the scene of that funeral. (*Id.*)

- December 17, 2009: The defendant was arrested at the intersection of Market Street and Pearl Street in San Francisco. (Millspaugh Decl., ¶ 8(c).) He was in a car with Hughes, his brother and fellow CDP member, when they were pulled over. (*Id.*) The defendant got out of the car and fled from police officers. (PSR, ¶ 30.) While the defendant was fleeing, he threw a loaded semi-automatic pistol onto the Street. (*Id.*) The defendant was convicted of carrying a concealed weapon on May 10, 2010. (*Id.*)

- June 3, 2010: The defendant committed the crime in this case. He and Hughes were on Turk Street between Steiner and Pierce. That area is the territory of the "Knock Out Posse," ("KOP") another Western Addition

---

[5] Heard was convicted on July 1, 2010. He was sentenced to 25 years to life in prison.

[6] Elmore was convicted of being a felon in possession of a firearm in front of the Honorable Charles R. Breyer. He is currently serving a federal sentence.

1 gang. Because KOP and CDP were in the middle of a gang feud, the
2 defendant, a CDP member, would not have gone there without a gun.
3 (Millspaugh Decl., ¶ 9.) Agents believe that the shooting was gang-
4 related. (*Id.*)

- September 6, 2010: The defendant was shot in what police believe was
  another gang-related shooting. In that incident, the defendant was shot
  seven times. (Millspaugh Decl., ¶ 10.) His girlfriend was also shot and
  paralyzed from the waist down. (*Id.*)

Those incidents show that over a period of less than two years, the defendant was involved in or present at five gun-related crimes that law enforcement agents believe were gang-related. Any one of those incidents, by itself, would not show that the defendant was in a gang. But the Court should not look at each of those incidents in a vacuum. The Court should examine them together and in the context of the additional evidence that the Government has put forth showing that the defendant is a gang member.

DATED: November 10, 2011                    Respectfully submitted,

                                            MELINDA HAAG
                                            United States Attorney

                                            /S/
                                            _____
                                            TAREK HELOU
                                            KATHRYN HAUN
                                            Assistant United States Attorneys

U.S.' REPLY SENT. MEM.
NO. CR 10-0772 SC                -6-